UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, for the
use and benefit of CHARLES T.
DRISCOLL MASONRY RESTORATION,
CO., INC.,

                              Plaintiff,

   -against-                                       5:17-CV-453 (LEK/DEP)

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,
*et al.*,

                              Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Charles T. Driscoll Masonry Restoration, Co., Inc. ("Driscoll") commenced this action against defendants Travelers Casualty and Surety Company of America ("Travelers") and Serviam Construction, LLC, pursuant to the Miller Act, 40 U.S.C. § 3131 *et seq.*, and various state law causes of action. Dkt. No. 1 ("Complaint"). Presently before the Court is Defendants' motion to dismiss or transfer and motion to strike. Dkt. No. 10 ("Motions"); see also Dkt. No. 10-3 ("Memorandum"); Dkt. No. 10-2 ("Orr Affidavit"). Driscoll opposes the Motions, Dkt. No. 17 ("Response"), and Defendants filed a reply, Dkt. No. 23 ("Reply"). For the reasons that follow, the Court grants in part and denies in part Defendants' Motions.

**II.    BACKGROUND**

    **A.  Factual History**

Driscoll is a New York corporation whose principal place of business is Skaneateles, New York. Compl. ¶ 3. Travelers, which "is in the business of writing performance and payment bonds," is a Connecticut corporation with a principal place of business in Hartford, Connecticut. Id. ¶ 4. Serviam is a Pennsylvania limited liability company whose principal place of business is Altoona, Pennsylvania. Id. ¶ 5.

This case stems from a construction project overseen by the Department of Veterans Affairs ("VA") in Syracuse, New York. Id. ¶ 6. Serviam contracted with the VA to perform work related to "the federal project commonly known as 'Building Facade and Parapet Repairs." Id. ¶ 7. On October 2, 2015, Travelers issued Serviam a payment bond[1] in the amount of $2,444,652. Id. ¶ 8; see also Orr Aff. Ex. 2. Then, on November 16, 2015, Serviam entered a subcontract with Driscoll in which Driscoll agreed "to furnish labor, materials and equipment to complete . . . masonry and abatement work . . . for the agreed sum of $1,080,106." Compl. ¶ 9; see also Orr Aff. Ex. 1.[2] The subcontract contains the following clause: "The construction, interpretation, enforcement and all other matters relating to this Subcontract and any amendments or modifications hereto shall be governed by the laws of the Commonwealth of Pennsylvania, and jurisdiction and venue for any litigation arising under this Subcontract shall lie within the appropriate court in Blair County, Pennsylvania." Orr Aff. Ex. 1, § 11. The subcontract also

---

[1] "A payment bond is a surety bond issued by an insurance company or bank to guarantee that all subcontractors and material suppliers on a project will be paid." Travelers Cas. & Sur. Co. of Am. v. Frederick (In re Frederick), No. 09-BR-72336, 2012 WL 465857, at *1 n.3 (Bankr. N.D. Ala. Feb. 13, 2012).

[2] As a result of several change orders and additional work performed by Driscoll, the subcontract balance is now $1,092,264.53. Compl. ¶¶ 12–13.

2

states that Driscoll "waives the right to trial by jury on any issues relating to this Subcontract." Id.

Driscoll began working on the project around July 2016. Id. ¶ 11. At some point, Serviam accused Driscoll of causing "damage to existing roofs at . . . several project work sites." Id. ¶¶ 14–15. Driscoll claims it had nothing to do with the damage. Id. ¶ 19. Nevertheless, Serviam has told Driscoll it will back charge the cost of repairing the roofs against Driscoll's subcontract balance, and Driscoll alleges that the repairs will cost over $300,000. Id. ¶¶ 16–17. Serviam has also informed Driscoll that "it will make no further payments under the Subcontract until the roof repairs are completed, and the total amount of cost of the repairs has been deducted from Driscoll's Subcontract." Id. ¶ 18. Driscoll has sought payment from Serviam for work valued at $932,258.53, but Serviam has paid only $487,579.34. Id. ¶ 20. According to Driscoll, it "has duly performed the Subcontract," and "Serviam has breached the Subcontract by failing to pay Driscoll the amount due under the Subcontract." Id. ¶¶ 24–25.

### B. Procedural Background

Driscoll began this action on April 25, 2017. Compl. It brings five causes of action: breach of contract and quantum meruit against Serviam, id. ¶¶ 27–35, a Miller Act claim against Travelers, id. ¶¶ 36–41, a request for attorney's fees, id. ¶¶ 42–44, and a claim under 48 C.F.R. § 52.232–27, which is titled "Prompt Payment for Construction Contracts," id. ¶¶ 45–47. Driscoll seeks $451,614.49 plus prejudgment interest in damages. Id. ¶ 48.

Defendants, pointing to the forum selection clause quoted above, ask the Court to transfer this case to the Western District of Pennsylvania. Mem. at 3–6.³ They concede that there is no federal courthouse in Blair County, Pennsylvania, but they note that there is such a courthouse in Johnstown, a city in Cambria County, which is "adjacent to Blair County." Id. at 6. Thus, Defendants argue, transferring this case to the Western District of Pennsylvania would best effectuate the parties' intent. Id. Defendants also seek to strike Driscoll's jury demand on the ground that Driscoll agreed to waive its right to a jury trial in the subcontract. Id. at 6–7.

According to Driscoll, the Court cannot enforce the forum selection clause because the Miller Act provides for exclusive federal jurisdiction, and the clause mandates venue in a county in which no federal courthouse is located. Resp. at 2–4. Since the clause thus requires this case to be heard in state court, the argument goes, it is unenforceable. Id. at 4. Driscoll also claims that Travelers, as a nonsignatory to the subcontract, cannot enforce either the forum selection clause or the jury waiver. Id. at 7–10.

## III. DISCUSSION

---

³ Defendants purport to bring their motion to dismiss or transfer under 28 U.S.C. §§ 1404(a) and 1406(a), and Federal Rule of Civil Procedure 12(b)(3). Mem. at 1. But "the Supreme Court has expressly held that parties may not enforce forum-selection clauses through Rule 12(b)(3) motions to dismiss." City of Benkelman v. Baseline Eng'g Corp., No. 16-194, 2017 WL 3442390, at *4 (8th Cir. Aug. 11, 2017) (citing Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist of Tex., 134 S. Ct. 568, 577 (2013)). And "a motion pursuant to . . . § 1406(a) cannot rely upon a forum-selection clause." Volks USA Inc. v. A2 Hosting, Inc., No. 16-CV-4277, 2016 WL 6808113, at *4 n.3 (citing Atl. Marine, 134 S. Ct. at 577). Rather, a forum selection clause may be enforced "only through a motion to transfer venue under 28 U.S.C. § 1404(a)." Rudgayzer v. Google, Inc., No. 13-CV-120, 2014 WL 12676233, at *1 (E.D.N.Y. Feb. 10, 2014) (citing Atl. Marine, 134 S. Ct. at 575).

### A. The Forum Selection Clause

"When assessing a motion to transfer on the basis of a forum-selection clause, a court must first determine whether the forum-selection clause is valid and enforceable." Vulcan Capital Corp. v. Miller Energy Res., Inc., No. 13-CV-8751, 2014 WL 4384159, at *2 (S.D.N.Y. Sept. 4, 2014). "The enforceability of forum-selection clauses is determined by federal law, while interpretive questions going to their 'meaning and scope' 'are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause.'" Id. (quoting Martinez v. Bloomberg LP, 740 F.3d 211, 217–18 (2d Cir. 2014)).

In evaluating the enforceability of a forum selection clause, courts ask

> 1) whether the clause was reasonably communicated to the party resisting enforcement; 2) whether the clause is mandatory or permissive, i.e. whether the parties are required to bring the dispute to the designated forum or simply permitted to do so; and 3) whether the claims and parties involved in the suit are subject to the forum selection clause.

Sick Kids (Need) Involved People of N.Y., Inc. v. 1561599 Ontario, Inc., No. 15-CV-3756, 2015 WL 5672042, at *1 (S.D.N.Y. Sept. 2015) (quoting Martinez, 740 F.3d at 217). A forum selection clause is "presumptively enforceable" if it "was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute." Martinez, 740 F.3d at 217 (quoting Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007)). "A party can overcome this presumption only by . . . 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" Id. (quoting Phillips, 494 F.3d at 383–84).

5

Defendants argue that the forum selection clause at issue here is enforceable under Martinez. Mem. at 5–6. Driscoll does not dispute Defendants' Martinez analysis. Instead, it points to "a more fundamental problem: even if [the clause] were valid under Martinez, [it] . . . fails for the independent reason that it impermissibly pre-empts exclusive federal court jurisdiction [over Miller Act claims]." Resp. at 2. The Court agrees with Driscoll.

"The Miller Act is designed to provide an alternate remedy to subcontractors on government contracts, who cannot pursue traditional remedies, such as suing directly on the contract or securing a mechanic's lien against the improved property." United States ex rel. QSR Steel Corp. v. Safeco Ins. Co. of Am., No. 14-CV-1017, 2015 WL 4393576, at *1 (D. Conn. July 16, 2015) (collecting cases). Accordingly, the Miller Act provides that a recipient of a "contract of more than $100,000 . . . for the construction, alteration, or repair of any public building or public work of the Federal Government" must give the government a "payment bond . . . for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." § 3131(b). "The Miller Act confers on '[e]very person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished' a right to 'bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought'" if certain conditions are met. United States ex rel. Krol v. Arch Ins. Co., 46 F. Supp. 3d 347, 351 (S.D.N.Y. 2014) (alteration in original) (quoting § 3133(b)(1)).

Venue under the Miller act lies "in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." § 3133(b)(3)(B). Because "[t]his provision is a venue requirement and not a jurisdictional limitation," it "may be varied by a valid forum selection clause." United States v. Liberty Mut.

Ins. Co., No. 15-CV-2767, 2016 WL 1664906, at *2 (E.D.N.Y. Apr. 26, 2016) (collecting cases). But "such a clause may not alter the exclusive jurisdiction of the federal courts over Miller Act claims." Id. (collecting cases); see also United States for Use and Benefit of Bryan Elec. Co. v. Aetna Cas. & Sur. Co., 297 F.2d 665, 667 (2d Cir. 1962) (noting that the Miller Act "vests exclusive jurisdiction over suits on Miller Act bonds in the federal courts"). Thus, courts hearing Miller Act claims will not enforce a forum selection clause that provides only for a state-court forum. See, e.g., Alamo Masonry & Constr. Contractors, LLC v. Air Ideal, Inc., No. 13-CV-448, 2014 WL 1391024, at *1 (S.D. Tex. Apr. 8, 2014) ("[T]he Miller Act's exclusive federal jurisdiction renders a state-only forum-selection clause invalid.").

The forum selection clause in this case provides that "jurisdiction and venue for any litigation arising under this Subcontract shall lie within the appropriate court in Blair County, Pennsylvania." Orr Aff. Ex. 1, § 11. The parties disagree over the proper interpretation of this clause. Driscoll argues that it precludes venue in federal court because there is no brick-and-mortar federal courthouse in Blair County, Pennsylvania. Resp. at 4. Defendants, for their part, focus on the phrase "appropriate court," which they take to refer to "whichever court . . . has the power to hear the case." Reply at 3. Because the Western District of Pennsylvania is a "federal court with jurisdiction over Blair County," Defendants argue that the clause does not prevent a federal court from hearing the case. Id. at 4.

As Defendants correctly point out, id. at 3, since this dispute turns on the interpretation of a forum selection clause, the Court must apply the law selected in the contract's otherwise valid choice-of-law clause, see Martinez, 740 F.3d at 217–18 ("In answering the interpretive questions posed by [forum selection clauses] . . . we normally apply the body of law selected in an

7

otherwise valid choice-of-law clause."). Here, the subcontract provides that Pennsylvania law governs interpretation of its provisions, Orr Aff. Ex. 1, § 11, and there is no reason to doubt the enforceability of this choice-of-law clause.[4] Thus, the Court applies Pennsylvania contract law in interpreting the forum selection clause.

"[F]ederal courts must give the 'fullest weight' to decisions of the state's highest court when deciding questions of state law . . . ." Allocco Recycling, Ltd. v. Doherty, 378 F. Supp. 2d 348, 368 (S.D.N.Y. 2005) (quoting Santalucia v. Sebright Transp., Inc., 232 F.3d 293, 297 (2d Cir. 2000)). If the state's highest court has not provided relevant guidance, the court is "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." V.S. v. Muhammad, 595 F.3d 426, 432 (2d Cir. 2010). But "[w]here . . . a question of state law has not been conclusively resolved by those [state] courts, our general practice is to look next to the law of the circuit in which the state is located." Casey v. Merck & Co., Inc., 653 F.3d 95, 100 (2d Cir. 2011) (citing Factors Etc., Inc. v. Pro Arts, Inc., 652 F.2d 278, 283 (2d Cir. 1981)). A court may disregard a pronouncement on an unclear area of state law offered by the relevant federal court of

---

[4] Under New York choice-of-law principles, which apply here, Weber v. PACT XPP Techs., AG, 811 F.3d 758, 770 (5th Cir. 2016), courts typically "enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction," Welsbach Elec. Corp. v. MasTec N. Am., Inc., 859 N.E.2d 498, 500 (N.Y. 2006). Serviam is a Pennsylvania limited liability company with a principal place of business in Altoona, Pennsylvania. Compl. ¶ 5. That alone suffices to establish a reasonable relationship between Pennsylvania and the parties. See, e.g., Bleecker v. Zetian Sys., Inc., No. 12-CV-2151, 2013 WL 5951162, at *5 (S.D.N.Y. Nov. 1, 2013) ("A principal place of business is sufficient to establish a reasonable relationship between the parties and the state."). Further, there is no indication that application of Pennsylvania law here would "violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." Cooney v. Osgoode Mach., Inc., 612 N.E.2d 277, 284 (N.Y. 1993) (quoting Loucks v. Standard Oil Co., 120 N.E. 198, 202 (N.Y. 1918)).

8

appeals only if it believes that "the holding ha[s] been superseded by a later pronouncement from state legislative or judicial sources, or that prior state court decisions ha[ve] been inadvertently overlooked by the . . . court of appeals." Factors, 652 F.2d at 283.

Under Pennsylvania law, "[t]he fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself." Lesko v. Frankford Hospital-Bucks Cty., 15 A.3d 337, 342 (Pa. 2011) (quoting Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 468 (Pa. 2006)). Thus, "[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone." Robert F. Felte, Inc. v. White, 302 A.2d 347, 351 (Pa. 1973) (quoting E. Crossroads Ctr., Inc. v. Mellon-Stuart Co., 205 A.2d 865, 866 (Pa. 1965)). Courts discern "contractual intent" by looking to "the whole instrument," and they "do not assume that a contract's language was chosen carelessly . . . [or] that the parties were ignorant of the meaning of the language they employed." Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 429 (Pa. 2001). Pennsylvania law recognizes that "it is not the function of a court to rewrite [a contract] or to give it a construction in conflict with the accepted and plain meaning of the language used." Meeting House Lane, Ltd. v. Melso, 628 A.2d 854, 857 (Pa. Super. Ct. 1993) (collecting cases).

The parties have not pointed to—and the Court is unable to locate—any Pennsylvania state court decisions interpreting a forum selection clause with language similar to that at issue here. But in Wall Street Aubrey Golf, LLC v. Aubrey, 189 F. App'x 82 (3d Cir. 2006), the Third Circuit, applying Pennsylvania law, interpreted a forum selection clause that read: "This Lease shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, with venue laid in Butler County, Pennsylvania." Id. at 85. The plaintiff argued that the Western

9

District of Pennsylvania, which does not have a courthouse in Butler County, nevertheless afforded venue there. Id. at 86. The court disagreed: "To hold that the District Court for the Western District of Pennsylvania is a venue in Butler County would torture logic and conflate the disparate concepts of jurisdiction and venue." Id. True, "the Western District of Pennsylvania has jurisdiction over Butler County; but as Congress has ordained that it shall sit in Erie, Cambria, and Allegheny Counties—and nowhere else—it is self-evident that the Court has no location in Butler County." Id. at 87. Accordingly, "where venue is laid in Butler County, it is physically and logically impossible for a federal district court to hear the case." Id. The court therefore affirmed the district court's dismissal of the case without prejudice, noting that the plaintiff "remain[ed] free to attempt to bring suit in the Pennsylvania Court of Common Pleas, Butler County." Id.

Aubrey's application of Pennsylvania contract law applies with equal force here. The forum selection clause in this case provides that "jurisdiction and venue for any litigation arising under this Subcontract shall lie within the appropriate court in Blair County, Pennsylvania." Orr Aff. Ex. 1, § 11. There is no federal courthouse in Blair County, so "it is physically and logically impossible for . . . [the Western District of Pennsylvania] to hear th[is] case." Aubrey, 189 F. App'x at 87. Thus, under Aubrey's reasoning, the clause requires this case to be heard in a state court in Blair County. And since the Third Circuit encompasses Pennsylvania, its interpretation of Pennsylvania law demands our deference unless "the holding ha[s] been superseded by a later pronouncement from state legislative or judicial sources, or . . . prior state court decisions [were] . . . inadvertently overlooked by the . . . court of appeals." Factors, 652 F.2d at 283.[5] There

---

[5] The Court recognizes that Aubrey is an unpublished opinion and thus not binding authority. See Golden v. Beers, No. 14-CV-1468, 2015 WL 273649, at *5 n.4 (D.N.J. Jan. 21, 2015) ("[A]n unpublished opinion by the Third Circuit is not precedential . . . ."). It is unclear

10

is no indication that either of these exceptions applies here. Thus, the Court adopts Aubrey's reading of a materially similar forum selection clause and holds that the parties intended to select a state court forum to hear disputes arising from the subcontract.[6]

It is true that, unlike the forum selection clause here, the one in Aubrey does not provide for venue in an "appropriate court" in Butler County. Instead, it simply states that "venue [is] laid in Butler County, Pennsylvania." 189 F. App'x at 85. But the phrase "appropriate court" cannot bear the interpretive weight Defendants assign it. Defendants in effect read that phrase to mean "a court with jurisdiction over the case." See Reply at 3 ("'[A]ppropriate court' must be a reference to whichever court . . . has the power to hear the case."). Since the Western District of Pennsylvania has jurisdiction over Blair County, Defendants argue, the forum selection clause allows suit to be filed in federal court. The trouble is that Aubrey rejected a similar attempt to "conflate the disparate concepts of jurisdiction and venue." 189 F. App'x at 86. The forum selection clause here states that "jurisdiction *and venue* for any litigation arising under this Subcontract shall lie within the appropriate court in Blair County, Pennsylvania." Orr Aff. Ex. 1,

---

whether Factors requires less deference to a sister circuit's unpublished opinion predicting the course of state law. Even if it does, the Court finds Aubrey to be the most persuasive prediction of how the Pennsylvania Supreme Court would interpret the forum selection clause in this case. See Caronia v. Phillip Morris USA, Inc., 715 F.3d 417, 449 (2d Cir. 2013) ("In cases . . . in which state law controls and the governing principles are uncertain or ambiguous, we attempt to predict how the highest court of the state would resolve the uncertainty or ambiguity." (citing Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994))). Moreover, the Third Circuit "look[s] to [an unpublished] decision as a paradigm of the legal analysis [it] should . . . follow" where, as here, that decision is "factual[ly] similar" to the case at hand. Drinker by Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 n.12 (3d Cir. 1996).

[6] Aubrey was not a Miller Act case, and so it did not present the precise question before this Court. "[B]ut the different procedural context does not change the outcome of what is a basic issue of contract interpretation." Air Ideal, Inc., 2014 WL 1391024, at *3.

§ 11 (emphasis added). The Western District of Pennsylvania has jurisdiction over Blair County, but it is simply not a venue *in* Blair County. See Relm Wireless Corp. v. C.P. Allstar Corp., 265 F. Supp. 2d 523, 524 (E.D. Pa. 2003) ("There is no question that this court has jurisdiction over certain defendants and events situated within the Eastern District of Pennsylvania—a nine-county area which includes Chester County. However, it trifles with language to describe a lawsuit filed in this court as one that has 'venue in Chester County.'").

Moreover, courts have regularly held that forum selection clauses using the similar phrase "a court of competent jurisdiction" preclude filing in federal court where the clauses pointed to a county or city with no federal courthouse. See, e.g., Renaissance Nutrition, Inc. v. Burkard, No. 12-CV-691, 2013 WL 1855767, at *2, 5–6 (W.D.N.Y. Apr. 11, 2013) (holding that a forum selection clause pointing to "a court of competent jurisdiction in Blair County, Pennsylvania" required venue in a state court in that county), adopted by 2013 WL 1855785 (W.D.N.Y. Apr. 30, 2013); Aqua Operations, Inc. v. City of Kyle, No. 11-CV-952, 2012 WL 12883066, at *2 (W.D. Tex. Jan. 27, 2012) ("Although this Court is apparently of 'competent jurisdiction' to hear this case, it is not located within Hays County. Therefore, this Court must enforce the forum selection clause by dismissing this suit. Were there a federal district court in Hays County, the Court would of course entertain a motion to transfer venue there, in lieu of dismissal, but there is no such court."), aff'd, 515 F. App'x 260 (5th Cir. 2013); Gold Canyon Mining & Constr., LLC v. Robinson Nev. Mining Co., No. 11-CV-95, 2011 WL 6400295, at *1 (D. Nev. Dec. 20, 2011) (concluding that a forum selection clause "providing that any dispute arising under the contract 'shall be decided by a court of competent jurisdiction in Ely, Nevada'" required "a state court

forum" because "there is no federal courthouse located in Ely, Nevada"). Thus, Defendants' reliance on the phrase "appropriate court" is unavailing.

The Court's reading of the forum selection clause here is confirmed by the Second Circuit's decision in Yakin v. Tyler Hill Corp., 566 F.3d 72 (2d Cir. 2009). There, the court was tasked with interpreting the following forum selection clause: "the venue and place of trial of any dispute that may arise out of this Agreement or otherwise, to which Tyler Hill Camp, or its agents, is a party shall be in Nassau County, New York." Id. at 74. In 1999, when the events giving rise to the litigation occurred, there was a federal courthouse in Nassau County, but by the time the plaintiff commenced litigation, "the federal courthouse in [Nassau County] had closed and the court was re-located . . . to Central Islip in Suffolk County." Id. The court found the clause unambiguous and concluded that "the parties intended that litigation take place in an appropriate venue in Nassau County and that this commitment was not conditioned on the existence of a federal courthouse in that county." Id. at 76. Since there was no federal courthouse in Nassau County when litigation began, the Second Circuit affirmed the district court's decision to remand the case to Nassau County State Supreme Court. Id. Other courts have reached the same conclusion about similar forum selection clauses. See, e.g., Argyll Equities LLC v. Paolino, 211 F. App'x 317, 319 (5th Cir. 2006) ("Because the forum selection clause unambiguously establishes that the underlying claims are subject to the exclusive jurisdiction of 'courts sitting in Kendall County,' and the district court does not meet that description, the court properly dismissed Paolino's suit . . . ."); Rihani v. Team Exp. Distrib., LLC, 711 F. Supp. 2d 557, 551 (D. Md. 2010) ("[A] venue limitation means what it says: when its language prohibits venue outside a geographic boundary, it must be interpreted to prohibit venue in any court that sits

13

outside that geographic boundary."). But see, e.g., Merrill v. Renier, No. 06-CV-404, 2006 WL 1587414, at *2 (W.D. Wash. June 6, 2006) ("Does a forum selection clause that mandates venue 'in the county of residence of the non-breaching party,' prohibit filing or removing an action in a federal district court that encompasses the county, but has no courthouse within the county? Under Ninth Circuit law, the answer is 'No.'").

Since the forum selection clause in the subcontract unambiguously shows the parties' intent to litigate this dispute in Pennsylvania state court, it violates the federal courts' exclusive jurisdiction over Miller Act claims and is therefore unenforceable. See Air Ideal, Inc., 2014 WL 1391024, at *3 ("Because there is no federal court located in Seminole County and the Miller Act establishes exclusive federal jurisdiction over the claims in this case, the forum selection clause is an invalid attempt to override Congress's intent to have . . . this claim litigated in federal court.").[7]

---

[7] Defendants argue in their Reply that, even if the Court deems the forum selection clause unenforceable, it should nevertheless transfer the case to the Western District of Pennsylvania under § 1404(a). Reply at 7. The Court rejects this argument for two reasons. First, Defendants did not raise it in their moving papers, and it is well established that courts need not consider arguments raised for the first time in a reply brief. See, e.g., Bravia Capital Partners, Inc. v. Fike, 296 F.R.D. 136, 144 (S.D.N.Y. 2013) ("[A]rguments may not be made for the first time in a reply brief." (quoting Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993))). Second, even though § 1404(a) motions typically require courts to balance nine factors, Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc., 202 F. Supp. 3d 399, 405 (S.D.N.Y. 2016), Defendants do not discuss any of them in detail in their Reply, Reply at 7–8. It would be inappropriate for the Court to consider such an incompletely developed argument. See Herbert v. Architect of Capitol, 839 F. Supp. 2d 284, 298 (D.D.C. 2012) ("[T]he [defendant] has simply failed to support its argument with any meaningful measure of factual or legal argument. Courts need not consider cursory arguments of this kind, and the Court declines to do so here.").

### B. Driscoll's Jury Waiver

It is well established that "[a] contractual waiver of the right to a jury trial is enforceable 'if it is made knowingly, intentionally, and voluntarily.'" Westminster Sec. Corp. v. Uranium Energy Corp., No. 15-CV-4181, 2017 WL 2629475, at *2 (S.D.N.Y. June 19, 2017) (quoting Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 188 (2d Cir. 2007)). But because the right to a jury "is a fundamental one," "[c]ourts will indulge every reasonable presumption against such a waiver." Idearc Media LLC v. Siegel, Kelleher & Kahn LLP, No. 09-CV-1090, 2012 WL 162563, at *7 (W.D.N.Y. Jan. 18, 2012). Thus, "[c]ontract provisions waiving the right are narrowly construed, and the requirement of knowing, voluntary, intentional waiver is strictly applied." Morgan Guar. Tr. Co. of N.Y. v. Crane, 36 F. Supp. 2d 602, 603 (S.D.N.Y. 1999). "In addressing jury waiver clauses, courts have consistently examined the following factors: negotiability of the contract terms, disparity in bargaining power between the parties, the business acumen of the party opposing the waiver, and the conspicuousness of the jury waiver provision." Sullivan v. Ajax Navigation Corp., 881 F. Supp. 906, 911 (S.D.N.Y. 1995) (collecting cases).

Defendants seek to strike Driscoll's jury demand on the ground that Driscoll waived its right to a jury trial in the subcontract. Mem. at 6–7. The subcontract states that Driscoll "waives the right to trial by jury on any issues relating to this Subcontract." Orr Aff. Ex. 1, § 11. Driscoll does not dispute the enforceability of the waiver with respect to Serviam, but it argues that Travelers, as the surety, cannot enforce the waiver. Resp. at 9–10. The Court agrees with Driscoll and thus strikes the jury demand only to the extent that it seeks a jury trial against Serviam.

There is a dearth of authority on the question whether a surety such as Travelers may enforce a jury waiver contained in a contract between the surety's principal and the claimant. See Attard Indus., Inc. v. U.S. Fire Ins. Co., No. 10-CV-121, 2010 WL 3069799, at *2 (E.D. Va. Aug. 5, 2010) ("[T]he Court has found only two reported cases explicitly dealing with the issue, each reaching a different conclusion."). Nonetheless, the Court is persuaded by the reasoning of the Attard court, which declined to enforce such a waiver.

In Attard, the defendant-insurer sought to enforce a jury waiver contained in a subcontract between the plaintiff, a sub-subcontractor, and the contractor. Id. at *1. The subcontract stated that both the plaintiff and the contractor "expressly waive their right to a jury trial for any and all disputes arising out of or related to performance of this Subcontract." Id. The subcontract did not refer to the insurer "or the possibility that a surety will be obtained, or that payment bonds have been or will be issued in connection with [the contractor's] performance." Id. After the subcontract was executed, the insurer issued payment bonds "with respect to [the contractor's] performance in connection with the Project," and these bonds did "not contain a similar jury waiver provision, incorporate the Subcontract by reference, or refer to the Subcontract." Id.

The court was faced with the question whether the insurer, which was not a party to the subcontract, could enforce the jury waiver. Id. at *2. The court acknowledged that, because "a surety's liability to a claimant on a bond is measured by the liability of the surety's principal to that claimant," "a surety, defending a suit on the principal's bonded obligation, stands in the principal's shoes and may assert those defenses to liability available to the principal." Id. at *3. And it recognized that "courts have allowed a surety to enforce an arbitration provision in its principal's contract with a claimant," and that "an arbitration clause necessarily gives up not only

a jury but a court trial as well." Id. But the court refused to allow the insurer to enforce the jury waiver for three reasons. "First, the justification for a surety to 'stand in the shoes' of its principal diminishes when the principal's right to be enforced is not related to the principal's liability to the claimant, but to the process or procedure relating to the adjudication of that liability." Id. at *4. Second, "[t]hose cases that have enforced arbitration provisions, and their concomitant waiver of a trial and a jury, are driven by the strong federal policy in favor of arbitration." Id. There is no similarly strong policy favoring waiver of jury trial rights; indeed, as this Court has already noted, there is "a strong federal policy against jury waivers." Id. Third, the Attard court stressed that "in assessing whether there has been a jury waiver with respect to a given dispute," courts entertain every reasonable presumption against waiver. Id.

Here, the subcontract states only that Driscoll "waives the right to trial by jury on any issues relating to this Subcontract." Orr Aff. Ex. 1, § 11. It "does not explicitly waive the right to a jury trial in a suit on a bond, or to any dispute with a non-party to the Subcontract." Attard, 2010 WL 3069799, at *4. While the subcontract appears to contemplate the possibility of a payment bond, Orr Aff. Ex. 1, § 7, the payment bond itself contains no mention of a jury waiver, id. Ex. 2. Given that the right to a jury trial "is fundamental and a presumption exists against its waiver," Allegheny Energy, 500 F.3d at 188, and in light of the other arguments advanced in Attard, the Court declines to permit Travelers to enforce the waiver in these circumstances, see United States ex rel. Collins Plumbing, Inc. v. Turner-Penick Joint Venture, No. 11-CV-2834, 2013 WL 5462278, at *9 (S.D. Cal. Sept. 30, 2013) ("In short, Turner-Penick and the Surety Defendants have not made a sufficient showing to overcome the presumption against waiver. Accordingly, the Surety Defendants may not enforce the jury waiver provision against CCS.").

But because Driscoll does not dispute that Serviam has standing to enforce the waiver or that it is enforceable with respect to Serviam, the Court strikes Driscoll's jury demand to the extent that it seeks a jury trial against Serviam.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motions (Dkt. No. 10) are **GRANTED in part** as to the request to strike Driscoll's jury demand against Serviam, and **DENIED in all other respects**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: August 25, 2017
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge